Armbrecht Lumber Company, a Corporation, *Appellant,*
v. Z. D. Adair *et al., Appellees.*

Division B.

Decision Filed March 12, 1926.

W. J. *Oven,* for Appellant;

John L. *Moore,* for certain Appellees.

BUFORD, J.—The appellant, the complainant in the court below, filed his bill of complaint on the 6th day of June, 1921, in the following language to-wit:

"The Armbrecht Lumber Company, a corporation, brings this its bill of complaint against Z. D. Adair, C. F. Hinesly, T. J. Hunt and W. J. Richards, trading as Hunt and Richards, L. V. Laird, M. T. King, trading as M. T. King & Company, C. M. Tidwell, C. V. Carter, D. S. Sellars, G. H. Kellough, Ray Merritt, Thad Bell as Sheriff of Walton County, Florida, and the R. E. L. McCaskill Company, a corporation, and thereupon complaining, alleges as follows:

## 1.

"That your complainant is a corporation organized under the laws of the State of Alabama. That the above named individual defendants are all residents of Walton County, Florida, and are all over the age of twenty-one years. That the defendant, the R. E. L. McCaskill Company, is a corporation under the laws of the State of Florida, and has its principal place of business in Walton County, Florida.

## 2.

"That heretofore, to-wit from about the 1st of April, 1921, up to about the 1st day of May, 1921, one W. C. McDaniel, was engaged in the work of cutting, hauling and making up certain railroad ties for your orator. That such railroad ties as the said W. C. McDaniel cut and manufactured were to become, be and remain the property of your orator under an arrangement and agreement set forth in the memorandum of agreement between W. C. McDaniel and your orator, dated March 25, 1921, a copy of which is attached hereto, marked 'Exhibit A' and made a part hereof. That the said W. C. McDaniel, under the terms of the said agreement, cut and made up a large number of railroad ties. That some of the ties which were made up by the said W. C. McDaniel for your orator have been sold and shipped, but that there still remain made up for your orator approximately Two Thousand (2000) railroad ties in Walton County, Florida. These ties are located partly in the woods, and partly at the railroad track, some ties being located on property of Mr. L. V. Laird in Section 31, Tp. 3 N, and in Sections 5 and 6, Tp. 5 N. all in range 21 West; some of the ties north of Mossy Head, Florida; some of the ties on the Sand Mountain Track and some of the ties at and near the Dudley McCaskill switch on the Louis-

ville & Nashville Railroad Track, about three miles east of
DeFuniak. That on or about the first day of May, or
shortly before said date the said W. C. McDaniel left Wal-
ton County for parts unknown and left the said ties in the
places above stated. That thereupon, your orator sent its
agent to Walton County and proceeded to take possession
of all of the railroad ties and to mark said ties as follows,
'A. L. Co.' That at the time when your orator took posses-
tion of the ties, no other person or persons had any claim or
claims upon or to the ties of which your orator had any
notice.

3.

"The said defendant, M. T. King, trading as M. T. King
& Company claims title to all the above mentioned cross
ties under a bill of sale which he alleges was given him by
the said W. C. McDaniel covering all the said ties. Your
orator alleges that whatever right the said defendant M.
T. King has in and to the said ties or any of them was ob-
tained subsequent to and with due notice of your orator's
rights in and title to said ties, and that whatever interest
accrued to the said defendant M. T. King, under the said
bill of sale, is subject to and inferior to your orator's rights
as owner of the said ties.

4.

"That the defendants Z. D. Adair, C. F. Hinesly, T. J.
Hunt and W. J. Richards, trading as Hunt and Richards,
C. M. Tidwell, C. V. Carter, G. H. Kellough and Ray Mer-
ritt, all claim to have liens in various amounts against said
ties for labor furnished in the cutting, manufacturing and
hauling of said ties. Your orator alleges that it is without
positive knowledge as to which of the said defendants
named in this paragraph are validly entitled to labor liens

and which are not, and it is without positive knowledge as to the amounts of the various claims. That Z. D. Adair, C. F. Hinesly, T. J. Hunt and W. J. Richards, trading as Hunt and Richards, and C. V. Carter have filed separate suits in the County Judge's Court of Walton County, and have each issued in their suits, writs of attachment which have been levied upon the ties as aforesaid by the defendant, Thad Bell as Sheriff of Walton County and the said suits are now pending in the said County Judge's Court. That your orator believes, and therefore avers that a large number of the claims filed by the defendants named in this paragraph are not valid claims for labor or work done in the cutting or manufacturing of the said ties, and that the said defendants, and no one of them is entitled to liens upon the ties to secure the total sums as respectively claimed by them. And further that the writs of attachment issued in the aforesaid cases were issued after your orator had taken possession of the said ties as aforesaid.

5.

"That the defendants, D. S. Sellars, L. V. Laird and the R. E. L. McCaskill Company, a corporation, have claims against W. C. McDaniel for money due for stumpage, which stumpage the said defendants allege was used by the said W. C. McDaniel in the making up of the cross ties above described, and the said defendants mentioned in this paragraph claim liens on the said ties for amounts due on the said stumpage. That the said three defendants named in this paragraph sold their stumpage to W. C. McDaniel under a written contract containing the provisions as set forth in the copies of contracts made with the defendant, L. V. Laird and the defendant, R. E. L. McCaskill Company, both of which copies are attached hereto, marked "Exhibit B" and "Exhibit C" respectively, and made

parts hereof. That under said contracts, the said three defendants are not entitled to liens for the amounts due for stumpage. That the said defendants, L. V. Laird, D. S. Sellars and the R. E. L. McCaskill Company are threatening to bring suit against the said W. C. McDaniel to enforce their respective claims for stumpage, and are threatening to have writs of attachment issued against the said W. C. McDaniel for the purpose of having the sheriff seize and take possession of the said ties.

### 6.

"That the said defendant, M. T. King, trading as M. T. King & Company, has threatened to haul the ties from the woods and sell the said ties and keep the proceeds. That the said ties are depreciating in value daily and that they are exposed to the weather and also unguarded, and are liable to be stolen or burned pending the final action on the various claims and items in dispute between the parties in this cause. That so far as your orator knows there are no other person or persons who have any interest in or claim on the ties. That it will require some additional expense for hauling and handling to collect all of the ties at a place where they could be shipped, and consequently made saleable. That your orator, in order to protect its rights in the said ties would be compelled to resist the four attachments heretofore filed in the County Judge's Court and the three attachment suits which the stumpage claimants threaten to institute as aforesaid, and such proceeding as the defendant, M. T. King, trading as M. T. King & Company should decide to take with respect to the said ties, as well as whatever other proceedings other parties interested might decide to institute. And that pending the adjudication of the said various proceedings, the ties aforesaid which constitute the only assets out of which these

varius claims can be made, will be greatly damaged and depreciated in value and will probably be to a large extent scattered and lost. And that it is to the interest of every party to this cause that all of the various claims with respect the said ties should be adjudicated, in this cause instead of in the numerous separate legal proceedings which would be required in the absence of this proceeding in equity; and further that it is necessary to the interest of all of the parties to this cause, that a receiver be appointed to reduce said ties to his possession and to proceed to care for the said ties and to make sale thereof and to pay the proceeds of such sale into the registry of this Court in order that the largest amount possible may be realized out of the only assets upon which all the parties to this cause depend for payment of their respective claims.

For as much, therefore, as your orator is without remedy in the premises save in a court of equity, and to the end that the said defendants aforementioned may be required to make full, true and perfect answer, but not under oath, the answer under oath being hereby waived, that an account may be taken as to all of the amounts that may be due for labor on or about the making of the said cross ties; that your orator may be decreed to be the owner of the said cross ties subject to such valid liens as the Court shall find to exist on the said ties. That the defendants, and each of them be restrained and enjoined from instituting or further prosecuting any proceedings at law with respect to the matters involved in this cause which will affect the said cross ties or any of them; that a receiver be appointed by the Court to take possession of the ties, and hold them subject to the order of this Court, and that there should be a general accounting and adjustment of all the rights of all the parties of this suit by and under the authority of the Court. That the said defendants, Z. D. Adair, C. F.

Hinesly, T. J. Hunt and W. J. Richards, trading as Hunt & Richards, and C. V. Carter and each of them be ordered and directed to cause the release of all of the said ties from the writs of attachment heretofore issued as aforesaid, and levied upon said ties; that the defendant, Thad Bell, as sheriff of Walton County, may be restrained and enjoined from proceeding further under the writs of attachment issued as aforesaid, and that they be required to deliver possession of the ties free from the lien of the said writs to such receiver as this Court may appoint; that the Court may decree a sale of the ties by the receiver pending completion of this litigation and that your orator may have such other and further relief in the premises as equity may require and to Your Honor may seem meet:

"May it please your Honor to grant unto your orator the State's writ of subpoena to be issued out of this Honorable Court directed to the said defendants, Z. D. Adair, C. F. Hinesly, T. J. Hunt and W. J. Richards, trading as Hunt & Richards, L. V. Laird, M. T. King, trading as M. T. King & Company, C. M. Tidwell, C. V. Carter, D. S. Sellars, G. H. Kellough, Ray Merritt, Thad Bell, as sheriff of Walton County, and the R. E. L. McCaskill Company, a corporation, requiring them, and each of them to appear and answer in the premises, and that the same may be returnable according to law and the rules of this Honorable Court."

To which there was attached a copy of the contract referred to in the bill of complaint as being the contract between W. C. McDaniel and the complainant in the following language:

"MEMORANDUM OF AGREEMENT BETWEEN W. C. McDANIEL AND ARMBRECHT LUMBER COMPANY, AN ALABAMA CORPORATION.

"The purpose of which is to specify the arrangements

under which the said W. C. McDaniel is to get out some cross ties for the said Armbrecht Lumber Company.

"1. The Armbrecht Lumber.Company will honor and pay drafts drawn on it by the said W. C. McDaniel until the aggregate sum of said drafts do not exceed Four Hundred Dollars ($400.00), and a larger amount as hereinafter specified. No draft will be honored unless there is attached to same an itemized statement covering a description for what purpose the money covered by the draft is used, or will be used, or has been used.

"II. Each draft when paid will be charged to the account of the said W. C. McDaniel on the books of the said Armbrecht Lumber Company until a total amount so charged in drafts paid, checks sent, or money advanced to aggregate the sum of Four Hundred Dollars ($400.00) has been drawn by or paid to the said W. C. McDaniel.

"III. It is agreed that additional advances over and above the Four Hundred Dollars ($400.00) mentioned above will not be made unless the said W. C. McDaniel has made delivery of ties to the value at least of Four Hundred Dollars ($400.00) previous to the time of his asking for advances, over and above that amount. The value of the ties to be figured at 75c per tie delivered at regular loading points on the railroad.

"IV. The money herein provided for is to be used only for the purpose of producing cross ties for the account of the said Armbrecht Lumber Company, and which are to become their property, and no part of said money is to be used for any other purpose whatever.

"V. When the ties are ready to be delivered or are delivered at recognized points along the L. & N. Railroad in Florida, said W. C. McDaniel is to report to the said Armbrecht Lumber Company regularly at least once per week,

the number of ties delivered, and definitely stating where they are.

''VI. When a carload of said ties have been delivered, or not sufficient number to make a carload but sufficient number to make a sale, said ties are to be sold to the best possible advantage by said Armbrecht Lumber Company, or said W. C. McDaniel, provided if sold by the said W. C. McDaniel they are to be sold in the name of the Armbrecht Lumber Company, and the proceeds of said sale and all money coming from said sale are to be remitted to the Armbrecht Lumber Company immediately and no one else.

''VII. All ties are to be and remain at all times the property of the said Armbrecht Lumber Company, and of no one else, until they are sold and delivered and paid for under terms of sale as provided above.

''VIII. Said W. C. McDaniel is to report in detail the cost of the ties, stumpage, manufacturing, hauling, and other expense per ties or average per tie.

''IX. The Armbrecht Lumber Company agrees to credit to the account of said W. C. McDaniel the net proceeds obtained from the sale of ties produced and sold under this agreement. Any credit to the account of said W. C. McDaniel that may be shown on the books of the said Armbrecht Lumber Company or the profits obtained from the sale of such cross ties over the cost of production as shown by the account is to be divided equally between the said W. C. McDaniel and the said Armbrecht Lumber Company.

''X. This agreement as to advances may be terminated at any time by the Armbrecht Lumber Company when it is sufficiently found that said W. C. McDaniel has not manufactured or delivered sufficient ties to warrant further advances, or when the arrangement herein provided for may not be profitable to the Armbrecht Lumber Company.

''XI. It is the intent and purpose of this agreement that

the Armbrecht Lumber Company is to continue advancing the said W. C. McDaniel as provided herein as long as he has manufactured and delivered ties to warrant such advances, and this agreement proves to be mutually profitable.

"The intent and purpose of this agreement in respect to the disposition of the profit is that the said Armbrecht Lumber Company and the said W. C. McDaniel are to divide the net profits half and half. All expenses incident to the production of said ties are to be deducted from the net proceeds in order to arrive at the net profit, this to be divided as above.

This agreement is signed in duplicate by the said Armbrecht Lumber Company and the said W. C. McDaniel, this 25th day of March, 1921."

A plea was filed by the defendant Carter, answers were filed by Adair, Hinesly, Carter, King and Sellars; the plea filed by Carter was as follows:

"C. V. Carter, one of the respondents, for a further plea and answer to the said bill of complaint filed herein says that the complainant Armbrecht Lumber Company, and W. C. McDaniel are shown by their contract and memorandum of agreement attached to their bill of complaint herein, to be partners in the matter of the said cross ties in question, and such partners the said complainant Armbrecht Lumber Company is hereby jointly liable for the sum of $98.47 which sum is due to this respondent for the hauling of the said ties for 'bunching' the said ties in the wood for purpose of hauling and otherwise preparing them for market.

"That respondent alleges that the said W. C. McDaniel and the Armbrecht Lumber Company are jointly and severally liable for the said labor done upon and to the said cross ties and that the respondent is entitled to a lien for

such labor and work to the extent of his claim given herein-above.

"Wherefore respondent prays that complainant be required to pay the said sum of $98.47, and that the court decree a lien upon the said ties or the proceeds thereof in favor of respondent, and costs of this defence in this cause."

The answer by Adair was as follows:

"Now comes Z. D. Adair, one of the respondents in the above styled cause and makes answer to the bill of complaint filed in same, and thereupon answering says:

"That on the 19th day of May, 1921, he began suit in the County Judge's Court of Walton County, Florida, by attachment against W. G. McDaniel for the sum of $21.40 which attachment was levied upon the cross-ties mentioned in this cause in the bill of complaint; that he has been prevented from further action in the bill of complaint; that he has been prevented from further action in said cause because of the injunction issued in the suit; that W. C. McDaniel owes him, the said Z. D. Adair, the sum of $21.40 for hire of cars for transporting W. C. McDaniel and laborers to and from their work in cutting said ties, and for gasoline furnished to W. C. McDaniel for use in trucks in hauling said ties, which amount the said Z. D. Adair claims a lien upon the ties in question in said suit.

"The said Z. D. Adair further alleges that the memorandum of agreement between the complainant herein and W. C. McDaniel, a copy of which is attached to the bill of complaint; marked 'Exhibit A' and made a part thereof shows that the complainant and W. C. McDaniel were partners in the ties business operated by W. C. McDaniel in this bill of complaint set forth and as such partners are responsible to the respondent, Z. D. Adair, for his bill set forth above, and the said Z. D. Adair prays that the Court at a

hearing of this cause declare said parties partners and each responsible for the debt due the said Z. D. Adair, and the said Z. D. Adair further prays for his costs in this cause expended.''

The answer of Hinesly was as follows:

''Now comes C. F. Hinesley, one of the respondents in said cause and answers the bill of complaint herein filed and for answer says:

''That he is over the age of 21 years and a resident of Walton County, Florida; that he on the 19th day of May, 1921, instituted suit by attachment against W. C. McDaniel and had said attachment levied on the ties in question in this suit, and was proceeding thereunder to collect his claim for $43.50, due the said C. F. Hinesley for car hire in transporting W. C. McDaniel and his tie cutters to and from the work where they were cutting the ties mentioned in this suit, until prevented from proceeding further by the injunction in this cause granted. That said C. F. Hinesley is justly entitled to the said above described sum and claims a lien on said ties for the amount.

That C. F. Hinesley further alleges that the memorandum of agreement between the complainant and W. C. McDaniel, a copy of which is to the bill of complaint in said cause attached and marked 'Exhibit A' and made a part thereof, shows the complainant and W. C. McDaniel to be partners in tie operations of W. C. McDaniel which cut the ties mentioned in the said bill of complaint, and as such partners are jointly and severally liable to the respondent C. F. Hinesley for the amount he claims now and has claimed in the suit in attachment, to-wit $43.50, and prays that this Court will order the complainant as such partner to pay said sum and for his costs in the cause wrongfully expended.''

The answer of Carter was as follows:

"The respondent C. V. Carter, comes now and answers the said Bill of Complaint filed against him herein answering said bill says:

1.

"That the Respondent admits that he is a resident of the County of Walton and the State of Florida and that he is above the age of twenty-one years.

2.

"That as to that part of the said Bill of Complaint and which is relevant to the Respondents, Z. D. Adair, C. F. Hinesly, T. J. Hunt and W. J. Richards, L. V. Laird, M. T. King, C. M. Tidwell, D. S. Sellars, G. H. Kellough, Ray Merritt and the R. E. L. McCaskill Company, a corporation, your respondent says that he does not know of the truth or the falsity of same and therefore neither denies or admits that part or those parts of the said Bill of Complaint which has to deal with only those respondents other than C. V. Carter.

3.

"That as to paragraph four of the said bill this respondent says that he made and entered into a contract by and between this respondent and one W. C. McDaniel, to the effect that respondent was to haul certain cross ties which are the said cross ties mentioned in the said bill of complaint and respondent did haul a large number of said cross ties for the said W. C. McDaniel and for which respondent was to receive pay therefor. And respondent says that he did not receive all that was due him for said hauling and that there is still due and payable to respondent by the said W. C. McDaniel the sum of $98.47 as a balance on payment for hauling these said cross ties.

"That suit was brought by respondent in the County Judge's Court for the sum of $98.47 against the said W. C. McDaniel, and due legal service was had upon the said defendant in the said suit by attachment of the said cross ties. A default and final judgment was entered up in said court giving respondent a judgment against the said ties for this said sum of money owed to respondent for said hauling of the said ties.

"That the true amount of this claim against the said ties for work upon the said ties is shown by the bill of particulars and the said declaration as filed in the County Judge's Court and ready to be produced in this court and which is for the sum of $98.47.

"That your respondent, C. V. Carter, ought to have a lien upon the said cross ties for said work and labor expended by him upon the said ties and which sum is the same as named above and is a just and correct claim.

"And now this respondent says that he ought to have a lien upon the said ties and prays the court to decree and order that respondent do have and recover the said amount out of the proceeds of the sale of these said ties, and all costs wrongfully expended by respondent."

And the answer of King was as follows:

"M. T. King, one of the respondents named in the above stated case, by solicitor, saving and reserving unto himself all and all manner of benefits of exceptions that may be had or taken to the manifold errors, uncertainties and insufficiencies of complainant's bill of complaint, for answers thereunto, or to so much as to such parts thereof as he is advised that it is material or necessary to make answer unto, answering says:

"That his claim to the ties involved in this cause is based upon the fact that he, as King & Co. furnished to the said W. C. McDaniel goods, wares and merchandise to assist the

said W. C. McDaniel in the purchasing, manufacturing and delivering the said ties, and also upon a bona fide purchase and delivery of the ties from the said W. C. McDaniel before the institution of any proceedings relative to them and before there was any notice of any relationship existing between W. C. McDaniel and the complainant in this case other than that contained in the instrument attached to complainant's bill of complaint, which this respondent is informed and believes shows the relationship of partners between the complainant and the said W. C. McDaniel, and therefore this respondent avers that the complainant and the said W. C. McDaniel were, and are partners with reference to the said cross ties, and that the complainant is liable to this respondent for the acts of the said W. C. McDnaiel relative to the said ties.

"The premises being considered this respondent prays that he be decreed to be the owner of the said ties, and in the event that he should not be decreed to be the owner thereof that he be decreed to have a lien of prior dignity to all others upon the said ties and the proceeds thereof, and that the complainant and the said W. C. McDaniel be decreed to be liable to this respondent for any sums that may be decreed to be due to him in the premises, together with such attorney fees as may be provided for by law.

"That this respondent may receive such other and further relief in the premises as may seem meet and equitable and as in duty bound this respondent will ever pray."

The answer of Sellars was as follows:

"Now comes the respondent, D. S. Sellars and answers the bill of complaint filed in the above cause and thereupon answering says:

"That he is a resident of Walton County, Florida, and over the age of 21 years; that he agreed to sell to W. C. McDaniel stumpage for cross ties and did furnish to the

said W. C. McDaniel for the ties or part thereof involved. in this suit stumpage, and that under such agreement the said W. C. McDaniel now owes the respondent for such stumpage approximately the sum of $300.00, for which sum the said respondent claims a lien on the ties in this cause mentioned and involved.

"That said respondent further alleges that the complainant and W. C. McDaniel are shown to be partners under the memorandum of agreement attached to complainant's bill of complaint, marked 'Exhibit A' and made a part thereof, and therefore jointly and severally liable for the sum owed the said respondent for the stumpage furnished the said W. C. McDaniel, and from which stumpage the ties in question and other ties have been cut, and said respondent therefore prays that the Court on a hearing in this cause require the complainant to pay to the said respondent the sums due him for stumpage which are now and have been for some time due, which sums the said respondent is ready and willing to prove, and further prays that he be allowed his costs in said cause wrongfully expended."

Other respondents entered appearance but filed no pleas. Testimony was taken upon issue presented by pleadings here affirmed to and the Court entered its decree in words and figures as follows:

"This cause coming on to be heard upon bill of complaint, answers filed by the respondents, Z. D. Adair, C. V. Carter, D. S. Sellars, M. T. King trading as King & Company, and C. F. Hinesly, and the testimony taken upon the issues raised thereby, the same having been set down for final hearing upon said bill answers and testimony, and the court having considered the same and being advised of its opinion, finds that the other respondents herein were duly served with subpoena in chancery, the said Ray Mer-

ritt, G. H. Kellough, the R. E. L. McCaskill Company, a corporation, and L. V. Laird having entered their respective appearances, but failed to plead, answer or demur and defendants C. M. Tidwell and T. J. Hunt and W. J. Richards, trading as Hunt & Richards, having failed to appear, plead, answer or demur, that each therefore are in default for want of such plea, answer or demurrer;

"That Armbrecht Lumber Company, a corporation by reason of its contract or agreement with W. C. McDaniel is liable as a partner with W. C. McDaniel for the indebtedness made by said W. C. McDaniel and set forth in the answers filed by the respective parties.

"That there is due by Armbrecht Lumber Company, a corporation, as such partner, to the respective respondents who have filed answers the following amounts to-wit: M. T. King, trading as King & Company, $555.15, C. V. Carter, $98.47, D. S. Sellars, $327.50, C. F. Hinesley, $43.50, Z. D. Adair, $21.00.

"That the respondents C. V. Carter and D. S. Sellars and Z. D. Adair hold lien upon the ties taken in charge by the Receiver, as follows: C. V. Carter for $98.47, D. S. Sellars, $167.50, Z. D. Adair, $8.00.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, That respondents Ray Merrit, G. H. Kellough, The R. E. L. McCaskill Company, a corporation, L. C. Laird, C. M. Tidwell, T. J. Hunt and W. J. Richards are in default, and a decree pro confesso is hereby entered against each of them for want of plea, answer or demurrer;

That the respondents M. T. King, trading as King & Company, C. V. Carter, D. S. Sellars, C. F. Hinesley and Z. D. Adair, do each have and recover of the said complainant, Armbrecht Lumber Company, a corporation, the amounts hereinabove found to be due the said respective respondents, viz: M. T. King, trading as King & Company,

$555.15, C. V. Carter, $98.47, D. S. Sellars, $327.50, C. F. Hinesley, $43.50, and Z. D. Adair, $21.00, together with the costs incurred herein by the respective parties, as taxes by the Clerk of this Court for all of which let executions issue to said respective respondents. The said costs to include that incurred in the County Judge's Court in the proceedings had therein by said parties.

"It is further ordered, adjudged and decreed that the report of M. T. King, the Receiver herein, be and the same is hereby confirmed, and that his compensation be fixed at $25.00. That from the $167.07, balance now in his hands, he pay first his own compensation of $25.00, and that the balance be paid by him into the Registry of the Court.

It is further ordered, adjudged and decreed that the Clerk of the Court pay to the respondents, D. S. Sellars, C. V. Carter, and Z. D. Adair, the said sum deposited in the Registry of the Court, in proportion to the amount of the liens held by the respective parties, deducting, however, from the amount coming to D. S. Sellars, the sum of $1.80, and C. V. Carter, $210, and Z. D. Adair $1.80, the same being the amounts due by each of the said parties upon expenses for taking testimony as shown by the statement on the files. It is further ordered, that after paying the said respective amounts to said respondents, the Clerk note on the margin of the record of this decree the amounts paid them, and that the same is credited upon the amounts herein decreed to them respectively.

"Done and ordered in chambers at DeFuniak Springs, Florida, this the 29th day of December, A. D. 1924.

A. G. CAMPELL, Judge."

From this decree appeal was taken by the complainant.

There were six (6) assignments of error. It will not be necessary, however, to consider any except the first. It is as follows:

"The Court erred in its decree dated December 29th, 1924, in finding against the Complainant Armbrecht Lumber Company, to the effect that it was liable as a partner with W. C. McDaniel for the indebtedness made by said W. C. McDaniel."

It was not contended that at any time the complainant held itself out to be a partner of W. C. McDaniel.

The evidence upon which the decree of the Court holding the complainant to have been a partner of W. C. McDaniel was the written agreement hereinbefore quoted together with the facts that the complainant had paid drafts drawn on it by W. C. McDaniel.

In the case of DuBos & Company vs. Jones, 34 Fla. 539, 16 Southern 392, the rule of law applicable to the instant case was enunciated in the following language:

"The law at one time treated the *sharing of profits* as the true test that established a partnership, particularly as to *third persons,* but this doctrine has become entirely obsolete, and is no longer law either in England or in this country. The law is now well settled that where a person loans or advances money or goods to another to be invested in some business or enterprise, the lender to share in the profits as or in lieu of interest on, or in repayment of such loan or advance, does not constitute a partnership; neither will it constitute a partnership as to third persons, unless the acts of the parties in furtherance of the agreement between themselves, amount to such *holding of themselves out* as partners as that third persons are misled into a reasonable belief that a partnership exists in fact."

In the case of Webster vs. Clark, 34 Fla. 637, 16 Southern 601, the Court said:

"When one does not allow the public or individual dealers to be deceived by the appearance of a partnership, the true test of whether a partnership does in fact exist be-

tween the parties is to be found in their intent as shown by the contract which they make, and names amount to nothing when the substance of the agreement shows them to be inapplicable.''

''Where parties enter into a trade arrangement upon such a basis as that they have a community of interest in the capital stock engaged in the business, and also a community of interest in the profits resulting therefrom, the uniform rule is that they will be held to be partners in such a venture.''

''Where the agreement under which a business arrangement is carried on, and which is claimed to be a partnership, is in writing and free from ambiguity or doubt, its legal effect must be determined as a matter of law and the intention of the parties gathered therefrom, but if the terms employed leave the true meaning in doubt, the construction put upon the contract by the parties thereto may be looked to in determining its legal effect.''

In Mach vs. Mayo, 80 Fla. 372, 86 Southern 222, it is held:

''A plea denying the existence of the relation in which defendants are sued imposes upon the plaintiff the burden of proving the existence of the relation as alleged.''

''Whether the facts constitute a partnership relation between persons is a question of law.''

Before the complainant could be held liable as a partner of W. C. McDaniel it was necessary that the existence of partnership relations should be established by one who sought to recover against the complainant upon the theory that such relations actually existed.

Mach vs. Mayo *supra*.

Having found no evidence that the complainant at any time held itself out as a partner of W. C. McDaniel, and being unable to construe the written agreement entered

into between W. C. McDaniel and the complainant as a contract creating a partnership relation between the parties we must hold that the decree of the Chancellor holding the complainant to have been a partner of W. C. McDaniel was error and therefore that the decree should be, and the same is reversed and the cause is remanded for such further proceedings as may be required.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

BROWN, C. J., AND ELLIS AND STRUM, J. J., concur in the Opinion.